**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————

**ROBERT MCNAUGHT,**

                         **Petitioner,**          **08 Civ. 2998 (JGK)**

          **- against -**                **OPINION AND ORDER**

**UNITED STATES OF AMERICA,**

                         **Respondent.**

———————————————————————

**JOHN G. KOELTL, District Judge:**

     The petitioner, Robert McNaught, moves pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence for a violation of supervised release.[1]  The primary basis for the petition is the alleged ineffective assistance of counsel in connection with the petitioner's plea of guilty, entered in this Court on October 27, 2006, to the violation of supervised release, and his sentencing the same day.  The petitioner also alleges violations of due process in connection with the plea and sentencing proceedings.  This case has involved several rounds of briefing by both sides and the Court has taken into account all the arguments raised by the parties in their submissions as well as during the arguments.

———————————

[1]     The petitioner originally moved in the alternative to vacate, set aside, or correct his sentence under 28 U.S.C. § 2241, but has abandoned that motion.

I

On March 19, 2002, the petitioner pleaded guilty to a
conspiracy, in violation of 21 U.S.C. § 846, to distribute and
possess with intent to distribute five kilograms and more of
cocaine, in violation of 21 U.S.C. §§ 821, 841(a)(1), and
841(b)(1)(A).  The Court sentenced the petitioner to a term of
incarceration of time served, to be followed by five years
supervised release, a $10,000 fine, and a mandatory $100 special
assessment.  The sentence was a substantial departure below the
applicable Guideline Sentencing Range of 70-87 months based on
this Court's finding that the offense was aberrant behavior and
that a departure was warranted under § 5K2.20 of the Sentencing
Guidelines, a departure to which the Government consented.

On October 27, 2006, the petitioner pleaded guilty to
violating the conditions of his supervised release.  According
to the Amended Specification to which the petitioner pleaded
guilty, on or about March 11, 2005, the petitioner violated his
supervised release by committing the state crime of arson in the
third degree, a third degree felony, in Ewing, New Jersey.
According to the Amended Specification, the petitioner committed
arson by going to the residence of his former girlfriend and,
after seeing her enter the residence, throwing a rock through
her window and starting a fire at her residence.  (Amended
Specification 3; Tr. 18.)  In his allocution, the petitioner

2

admitted that he started the fire by lighting a paper towel,
placing it in a bottle of alcohol and leaving the bottle in a
flower bed directly below the broken window.  (Tr. 23-24.)

In July 2006, the petitioner had pleaded guilty to the
state crime of arson in the third degree in Mercer County
Superior Court in New Jersey.  The state court sentenced the
petitioner to a term of incarceration of four years and six
months, and ordered him to pay restitution of $500 and
incidental damages.  (Tr. 3.)  In the course of the petitioner's
state court plea, he indicated that he understood that "the
federal sentence that is going to be imposed as a result of the
entry of this plea is going to be consecutive to the sentence
that [the state court judge] impose[s] . . . ."  (Gov't Ex. A,
18.)  At the petitioner's state court sentencing, although the
state court judge initially indicated that the state court
sentence "will ultimately be concurrent to any sentence imposed
as a result of the violation of [the petitioner's] federal
probation" (Gov't Ex. A, 2), the petitioner's attorney clarified
that "[i]t is a consecutive sentence no matter how you slice it
if you go forward in state sentencing first" (Gov't Ex. A, 11).

As noted, the petitioner pleaded guilty to violating his
supervised release on October 27, 2006.  During the proceedings,
at which the petitioner was represented by counsel, the
petitioner pleaded to the Amended Specification and allocuted as

3

described above.  The Specification was amended at the request
of the petitioner's attorney to reflect that the petitioner had
committed the state crime of Arson in the Third Degree, to which
he had pleaded guilty in state court, and not aggravated arson
and arson for hire, crimes to which he had not pleaded guilty.
(Tr. 5-6.)  Before accepting the petitioner's plea, the Court
recited the Amended Specification aloud to the petitioner and
confirmed that the petitioner understood it.  (Tr. 18.)  The
Amended Specification categorized the state crime committed by
the petitioner as a Grade A violation of supervised release.

     The parties assured the Court that no promises had been
made with respect to the petitioner's sentence, and the
petitioner assured the Court that no one had offered him any
inducement or threatened him or forced him to plead guilty.
(Tr. 22.)  The Court explained that the maximum sentence the
Court could impose was to revoke the petitioner's supervised
release, sentence him to prison for five years, and re-impose
supervised release for life.  (Tr. 20.)  The Court explained
that the Sentencing Guidelines were only advisory and that they
provided for a sentence of twenty-four to thirty months for the
violation.  (Tr. 21.)  The Court also explained to the
petitioner that no one, including his lawyer, could predict what
his sentence would be, and that his sentence "lies within the
discretion of the Court," which the petitioner confirmed that he

understood.  (Id.)  The petitioner indicated that he was
satisfied with counsel's representation of him.  (Tr. 14.)
After the petitioner's allocution, the Court accepted his guilty
plea.

Following the acceptance of the petitioner's guilty plea,
the parties indicated that they wished to proceed directly to
sentencing.  The Court instructed the petitioner that the
petitioner did not have to proceed directly to sentencing, and
that he could take time if he wished to make any submissions in
connection with sentencing "or if for any reason [the
petitioner] wanted to put the sentence off to another time . . .
."  (Tr. 27.)  The petitioner consulted with counsel and then
assured the Court that he wished to proceed directly to
sentencing, stating: "I don't see any reason to adjourn this
matter."  (Tr. 27.)  The Court therefore proceeded directly to
sentencing.

At sentencing, the Government requested a sentence within
the Guidelines range of 24-30 months.  However, the Probation
Department recommended a sentence of five years imprisonment,
the statutory maximum.  A representative from the Probation
Department indicated that the Probation Department's
recommendation was largely based on the downward departure that
the Court had granted to the petitioner in the original sentence
for the drug conspiracy to which the petitioner pleaded guilty

on March 19, 2002.  (Tr. 31.)  The Probation Officer stressed
that the original sentence under the Sentencing Guidelines would
have been 70-87 months but the Court had downwardly departed to
a sentence of time served, and that deterrence warranted a
sentence of 60 months imprisonment for the violation of
supervised release.  (Tr. 31-32.)

Speaking on behalf of the petitioner, defense counsel urged
the Court, in determining an appropriate sentence, to take into
account the petitioner's struggles with alcoholism and mental
illness.  The petitioner told the Court that "[defense counsel]
has expressed very well for me."  (Tr. 40.)  In his own
statement to the Court in connection with sentencing, the
petitioner reiterated the representations made by defense
counsel regarding the petitioner's struggles with alcoholism and
mental illness.  (Tr. 41.)

After listening to the parties, the Court sentenced the
petitioner to thirty months incarceration to be served
consecutively to the sentence imposed by the state court for
arson, and a term of five years supervised release to follow
imprisonment.  (Tr. 46.)  In November 2006, the petitioner
appealed his sentence to the Court of Appeals for the Second
Circuit.  On January 30, 2008, the Court of Appeals granted the
petitioner leave to withdraw his appeal without prejudice in
order to file the present petition before this Court.  In March,

2008, the petitioner filed the present petition to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.


                                 II

      The petitioner's primary allegation is that defense counsel provided ineffective assistance to the petitioner in connection with the plea and sentencing proceedings on October 27, 2006. The petitioner's main argument in this regard is that defense counsel failed to protect his interests with respect to the grade classification of his violation of supervised release. Specifically, the petitioner argues that the conduct that resulted in his state court conviction for third degree arson was only a Grade B violation of supervised release, and that defense counsel was ineffective for failing to explain to him the difference between Grade A and Grade B violations, and for allowing the Amended Specification to categorize his conduct as a Grade A violation.  The petitioner also argues that defense counsel was ineffective in a variety of other ways, including neglecting to make certain sentencing arguments.


                                 A

      To establish a claim of ineffective assistance of counsel, the petitioner must show both that: (1) his counsel's performance was deficient in that it was objectively

unreasonable under professional standards prevailing at the time, and (2) his counsel's deficient performance was prejudicial to his case.  See Strickland v. Washington, 466 U.S. 668, 686 (1984); Bunkley v. Meachum, 68 F.3d 1518, 1521 (2d Cir. 1995).

The petitioner cannot meet the first prong of this test merely by showing that his counsel employed poor strategy or made a wrong decision.  Instead, the defendant must establish that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment."  Strickland, 466 U.S. at 687.  In fact, there is a "strong presumption" that defense counsel's conduct fell within the broad spectrum of reasonable professional assistance, and a defendant bears the burden of proving "that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (citing Strickland, 466 U.S. at 688-89).

To meet the second prong of the Strickland test, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland, 466 U.S. at 694; see also Ramos v. United

States, No. 97 Civ. 2572, 1998 WL 230935, at *3 (S.D.N.Y. May 8, 1998).

Where a defendant challenges a guilty plea on the basis of alleged ineffective assistance of counsel, the defendant must show that "there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." United States v. Couto, 311 F.3d 179, 187 (2d Cir. 2002) (citing United States v. Hernandez, 242 F.3d 110, 112 (2d Cir. 2001) (per curiam)) (alteration in original and citation omitted); see also Hill v. Lockhart, 474 U.S. 52, 59 (1985). In the context of sentencing, the petitioner must show that but for counsel's ineffectiveness, there is a reasonable probability that the sentence imposed would have been different. See United States v. Workman, 110 F.3d 915, 920 (2d Cir. 1997).

B

The petitioner argues that the conduct resulting in his conviction in New Jersey constituted only a Grade B violation of supervised release, and that he would not have pleaded guilty to the Amended Specification categorizing his conduct as a Grade A violation had defense counsel explained the difference between Grade A and Grade B violations.

The United States Sentencing Guidelines establish different grades for supervised release violations based on the level of seriousness.  A Grade A violation consists of "conduct constituting (A) a federal, state, or local offense punishable by a term of imprisonment exceeding one year that (i) is a crime of violence. . . ."  U.S.S.G. §7B1.1(a)(1).  A "crime of violence" is "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson . . . or otherwise involves conduct that presents a serious potential risk of physical injury to another."  U.S.S.G. § 4B1.2(a).  A Grade B violation consists of conduct constituting a "federal, state, or local offense punishable by a term of imprisonment exceeding one year" that is not a Grade A violation.  U.S.S.G. § 7B1.1(a)(2).

As the petitioner points out, "the grade of the violation [of supervised release] is to be based on the defendant's actual conduct."  U.S.S.G. § 7B1.1, Application Note 1; see also United States v. McNeil, 415 F.3d 273, 278 (2d Cir. 2005) (explaining that "[t]he evident purpose of [U.S.S.G. § 7B1.1, Application Note 1] is to assure that the grade classification rests on the 'actual conduct' underlying the charged violation supporting the revocation of release"); United States v. Lauter, 112 F.3d 506,

*2-4 (2d Cir. 1997).  There is no plausible dispute in this case that the petitioner's actual conduct sufficed to constitute the crime of third degree arson in New Jersey, and that crime is an offense under state law punishable by imprisonment for a term exceeding one year.  Cf. Lauter, 112 F.3d at *2-3 (indicating that grade of supervised release violation should be analyzed by identifying state law offense petitioner's actual conduct was sufficient to constitute and determining what grade of violation such offense warrants); United States v. Schwab, 85 F.3d 326, 327 (8th Cir. 1996) (same).  However, the parties dispute whether that offense constitutes a crime of violence under U.S.S.G. § 4B1.2(a).  The petitioner argues that the elements of the third degree arson statute in New Jersey are substantially dissimilar to the elements of arson offenses in other states because the New Jersey statute encompasses reckless conduct, while other arson statutes target only "willful and malicious" conduct.  The Government maintains that the New Jersey offense constitutes a crime of violence because it is arson and because, in any event, it otherwise presents a serious potential risk of physical injury to another.

The petitioner's argument is without merit.  The crime of third degree arson in New Jersey constitutes arson, and thus a crime of violence, for purposes of U.S.S.G. § 4B1.2(a).  "[I]f [a state's] definition of third degree arson substantially

11

corresponds to a modern generic definition of arson, then [a petitioner's] conviction may be counted as 'arson' for purposes of the federal sentencing statute." <u>United States v. Hathaway</u>, 949 F.2d 609, 610 (2d Cir. 1991) (per curiam).  There is no uniform modern generic definition of arson; rather, there is a "generic range" consisting of the elements that states tend to include in their definitions of arson.  <u>Id.</u> at 610-11.  In relevant part, the New Jersey statute defining third degree arson provides:

> A person is guilty of arson, a crime of the third degree, if he purposely starts a fire or causes an explosion, whether on his own property or another's:
>
> (1) Thereby recklessly placing another person in danger of death or bodily injury; or
>
> (2) Thereby recklessly placing a building or structure of another in danger of damage or destruction . . . .

N.J. Stat. 2C:17-1.b.

This statute, which incorporates purposeful conduct in starting a fire and reckless conduct in endangering a person or a structure, fits comfortably within the generic range of arson statutes.  At least several states define arson to include a recklessness component.  <u>See, e.g.</u>, N.Y. Penal Law § 150.05 (defining arson to include "recklessly damag[ing] a building . . . by intentionally start[ing] a fire") (New York law); N.H. Rev. Stat. § 634.1-III(b) (defining arson to include "purposely start[ing] a fire . . . on anyone's property and thereby

12

recklessly plac[ing] another in danger of death or serious bodily injury") (New Hampshire law); Ala. Code § 13A-7-43(a) (defining arson to include "recklessly damage[ing] a building by a fire or explosion") (Alabama law); see also Bethea v. Scully, 834 F.2d 257, 261 (2d Cir. 1987) ("[At common law,] someone who intentionally set fire to the contents of a building may be guilty of arson if he acted with reckless indifference as to whether the building would be ignited.") (internal quotation marks and alterations omitted).[2]

Moreover, in the context of arson, the requirement of reckless conduct substantially corresponds to the requirement of malicious or willful conduct.  See Hon. Leonard B. Sand, et al., Modern Federal Jury Instructions, 30-5 (explaining that to find defendant guilty under the federal arson statute, 18 U.S.C. § 844(i), the jury must find the defendant acted with "malicious intent," meaning that he set the fire "with the intent to cause damage, or that he did so recklessly and without regard to the likelihood that damage would result") (emphasis added); United States v. Iodice, 525 F.3d 179, 181 (2d Cir. 2008) (identifying 18 U.S.C. § 844(i) as the federal arson statute).

---

[2]     The Court of Appeals' analysis in Hathaway does not suggest otherwise. In Hathaway, the Court of Appeals found that a "wilful [sic] and malicious burning of personal property" was the essential element of third degree arson in Vermont, and that this was not an "unusual definition of arson." Hathaway, 949 F.2d at 610.  Nothing about these findings limits the generic range of arson statutes to those punishing only willful and malicious burning.

Therefore, the New Jersey third degree arson statute constitutes a crime of violence because it substantially corresponds to a modern generic definition of arson.  Because the petitioner violated his supervised release by committing conduct sufficient to constitute the offense of third degree arson in New Jersey, it follows that his conduct constituted a crime of violence.[3]

Because the petitioner's conduct resulting in a violation of supervised release was a Class A violation, defense counsel was not constitutionally ineffective for failing to explain the difference between Class A and Class B violations to the petitioner or for not making any arguments to the Court in this regard.  Further, because the distinction between Class A and Class B violations has no bearing on the petitioner's case, there is no reasonable probability that any explanation of the distinction would have caused the petitioner to change his mind about pleading guilty, and no reasonable probability that any argument about the distinction would have resulted in a more favorable Amended Specification or otherwise affected the petitioner's sentence.  Therefore, defense counsel's decision not to explain the distinction to the petitioner and to allow

---

[3]     It is unnecessary to reach the Government's alternative argument that the defendant's actual conduct constituted a Grade A violation of supervised release because it otherwise presented a serious potential risk of physical injury to another and was therefore a crime of violence under the residual clause of U.S.S.G. § 4B1.2(a).  Cf. Begay v. United States, 128 S. Ct. 1581 (2008); United States v. Gray, 535 F.3d 128, 131 (2d Cir. 2008).

the petitioner to plead to an Amended Specification that
described a Grade A violation of supervised release does not
provide a basis for an ineffective assistance of counsel claim.[4]

C

In addition to his argument concerning the distinction
between Grade A and Grade B violations of supervised release,
the petitioner asserts, in pro se submissions, several other
bases for his ineffective assistance claim, all of which lack
merit.

The petitioner contends that defense counsel was
ineffective for failing to make sentencing arguments to the
Court based on his mental health history and other issues.  This
contention is contradicted by the transcript of the sentencing
proceedings.  At those proceedings, defense counsel repeatedly

---

[4]     The petitioner also contends that his allocution was inadequate because
it did not explain the distinction between Grade A and Grade B violations of
supervised release.  This claim is without merit for the same reasons that
defense counsel was not ineffective for failing to explain the distinction
between Grade A and Grade B violations to the petitioner.  Indeed the
petitioner cites no authority for a requirement that a defendant who is
accused of a violation of supervised release must be advised of the different
grades of supervised release violations.  There is no requirement that a
defendant who pleads guilty to an offense must be advised of the sentencing
classification of the offense to which he is pleading guilty.  Compare Fed.
R. Civ. P. 11 with 18 U.S.C. § 3559 (sentencing classification of offenses).
Moreover, there is no requirement that a Court engage in an entire Rule 11
allocution for a violation of supervised release.  See United States v.
Carlton, 442 F.3d 802, 807 (2d Cir. 2006); United States v. Pelensky, 129
F.3d 63, 67 (1997); United States v. Meeks, 25 F.3d 1117, 1123 (2d Cir.
1994), abrogated on other grounds by Johnson v. United States, 529 U.S. 694
(2000).  In any event, the defendant was correctly advised that his violation
was a Grade A violation and he was advised of the maximum penalty as well as
the advisory range under the Sentencing Guidelines and that the advisory
Sentencing Guidelines were not binding on the Court.  (Tr. 18-21.)

invoked the petitioner's struggles with mental illness and
alcoholism, among other things, in arguing for a low sentence.
(Tr. 36-40.)  Indeed, the petitioner told the Court that defense
counsel had "expressed very well for [him]."  (Tr. 40.)  The
petitioner also argues that defense counsel should have obtained
a psychiatric expert in connection with the petitioner's mental
health.  However, the petitioner does not support this argument
and does not explain how such an expert would have been used,
what the expert would have said, and how that expert would have
added to the substantial argument made by defense counsel.

     The petitioner contends that due to certain documents
produced by the Court and federal law enforcement officials,
including the Judgment and Conviction, the New Jersey Department
of Corrections classified the petitioner as having a history of
arson with multiple offenses, with the result that his state
term of incarceration was adversely affected with respect to the
likelihood of parole, among other things.  The petitioner argues
that defense counsel could have prevented this mistake by
objecting to certain remarks by a representative of the
Probation Department at the plea proceeding.  However, whatever
the merits of this claim, the petition before the Court is a
petition to vacate, set aside, or correct the sentence imposed
on the petitioner for his violation of supervised release.  The
petitioner's complaint about his underlying state conviction and

sentence is not properly before this Court.  It appears that this argument should be made, if at all, to the New Jersey State court or the New Jersey State prison authorities, although the petitioner has also advised that his term in the New Jersey State prison has been completed.

The petitioner contends that defense counsel was ineffective for allowing him to be sentenced above the statutory maximum for the violation of his supervised release.  This claim is without merit because the petitioner's sentence did not exceed the statutory maximum.  Because the petitioner's underlying offense was a Class A felony, see 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A); 18 U.S.C. 3559(a)(1), he was subject to a maximum of five years imprisonment for violating his supervised release.  See 18 U.S.C. § 3583(e)(3).  The Court sentenced the petitioner to 30 months imprisonment, much less than the five year maximum.  The Court was also well within the statutory boundaries in sentencing the petitioner to 5 years of supervised release to follow his term of imprisonment.  See 18 U.S.C. § 3583(h) (explaining that length of term of supervised release may not exceed term of supervised release authorized by underlying offense less any term of imprisonment imposed upon revocation of supervised release); 21 U.S.C. § 841 (b)(1)(A) (specifying only a minimum term of supervised release, no

maximum).  Therefore, the petitioner's sentence was within what
was allowed under the relevant statutes.

     The petitioner also faults defense counsel for not seeking
credit for time served for the time the petitioner spent in
alcohol rehabilitation through pretrial services in New Jersey
from September through December 2005.  (Tr. 13.)  This argument
does not support an ineffective assistance of counsel argument
because the petitioner in fact brought this period of
rehabilitation treatment to the Court's attention at the time of
the plea allocution (Tr. 13), and defense counsel stressed the
problems that the petitioner had with alcohol and prior efforts
at rehabilitation.  (Tr. 35-39.)  It cannot be said that defense
counsel's failure to refer specifically to the more recent
period of rehabilitation treatment fell below an objective
standard of reasonableness or that defense counsel's reference
to it would have changed the sentence in any way.

     For all of the foregoing reasons, the petitioner's
ineffective assistance of counsel claims are without merit, and
provide no basis for vacating, setting aside, or correcting his
sentence for the violation of supervised release.


                              III

     Although the main thrust of his petition is the alleged
ineffective assistance of counsel, the petitioner also seeks, in

                              18

pro se submissions, to vacate his sentence on the basis of alleged due process violations.  All of the petitioner's due process allegations lack merit.

The petitioner claims that his guilty plea to the violation of supervised release was involuntary.  "[I]f a defendant's guilty plea is not . . . voluntary and knowing, it has been obtained in violation of due process and is therefore void." Boykin v. Alabama, 395 U.S. 238, 243 n.5 (1969) (internal quotation marks omitted).  In support of this claim, the petitioner argues that defense counsel induced him to plead guilty by promising that the Court would impose a sentence concurrent with his state court sentence, and by warning him that the Court would be "harsh" in sentencing if he did not plead guilty.  The petitioner also argues that he did not understand what he was pleading guilty to, in part because the Amended Specification was amended on the record.  "Due Process requires that a defendant receive written notice of the charges against him before his release is revoked."  McNeil, 415 F.3d at 276.

The petitioner's claim that his plea was involuntary fails because there is no evidence to support it and it is contradicted by the record of the petitioner's plea allocution. A defendant's statement at his plea allocution carries a strong presumption of verity.  Blackledge v. Allison, 431 U.S. 63, 74

(1977).  Such statements are conclusive absent a credible reason
for departing from them.  United States v. Gonzalez, 970 F.2d
1095, 1101 (2d Cir. 1992); see also Arias v. United States, No.
07 Civ. 4590, 2008 WL 3173403, at **2-3 (S.D.N.Y. July 31,
2008); Rosa v. United States, 170 F. Supp. 2d 388, 403-04
(S.D.N.Y. 2001).  When a defendant pleads guilty, fully
understanding the significance of the defendant's guilty plea,
"a district court on habeas review may rely on the defendant's
sworn statements and hold him to them."  Padilla v. Keane, 331
F. Supp. 2d 209, 217 (S.D.N.Y. 2004).

In this case, the petitioner has provided no basis to
ignore his sworn statements at his plea allocution.  At his
allocution, the petitioner swore that he understood that no one,
including his lawyer, could give him any assurance about his
sentence.  (Tr. 21-22.)  Defense counsel and the Government
prosecutor also assured the Court that there were no promises or
agreements of any sort with respect to the petitioner's plea or
sentence.  (Tr. 22.)  The Court then asked the petitioner: "Mr.
McNaught, has anyone offered you any inducement or threatened
you or forced you to plead guilty?"  (Tr. 22.)  The petitioner
swore unequivocally, "No."  (Tr. 22.)  Indeed after the Court
indicated its intention to impose a consecutive sentence the
Court asked the defendant if there was anything the defendant
wished to say before the Court imposed the sentence.  The

defendant responded: " . . . I was – just wish that you would have sentenced me to a concurrent [sentence] to the State of New Jersey.  And that's all I have, your Honor."  (Tr. 46.)  The defendant did not indicate in any way that he had been promised a concurrent sentence.

With respect to the Amended Specification, the petitioner assured the Court at his allocution that he had read the Specification and discussed it with his lawyer.  (Tr. 17-18.) The Amendment was made on the record at the request of the petitioner's counsel so that the Specification reflected the crime to which the petitioner actually pleaded guilty in New Jersey State court.  (Tr. 5-10.)  The transcript reflects that the petitioner's counsel noted that the Amendment was made and, after consultation with Mr. McNaught, Mr. McNaught wished to enter a plea of guilty.  (Tr. 11.)  Moreover, the Court read the Amended Specification aloud to the petitioner, and the petitioner then confirmed for a second time that he understood the nature of the charges against him.  (Tr. 18.)

In short, because the petitioner's claim that his plea was involuntary is based on conclusory allegations that contradict sworn statements he made during his plea allocution, this claim fails to provide a basis for vacating, setting aside, or correcting the petitioner's sentence.  Cf. Rosa, 170 F. Supp. 2d at 403.

The petitioner claims that the Court violated United States v. Booker, 543 U.S. 220 (2005), by referencing a "mandated condition" in reciting the Amended Specification to the petitioner. (Tr. 18.)  The petitioner's claim is based on a misunderstanding of the context in which the Court used the term "mandated condition."  In using the term "mandated condition," the Court, and the Amended Specification, indicated that the petitioner had violated a mandatory condition of his supervised release.  It is a required condition of supervised release that the defendant not commit another federal, state or local crime during the term of supervision.  See 18 U.S.C. § 3583(d).  The Court was not referring to any aspect of the Sentencing Guidelines.  Indeed, the Court described the Sentencing Guidelines as "advisory guidelines which are only advisory . . . . They are not binding on the Court in any way . . . ."  (Tr. at 21.)  To the extent that the petitioner argues that the use of the term "mandated" made him think that he was compelled to plead guilty, that argument also lacks merit because the Court repeatedly advised the petitioner that he did not need to plead guilty.  (Tr. at 16-18.)

The petitioner also argues that the Court violated Booker by taking into consideration the fact that the petitioner saw his former girlfriend enter the residence before breaking a window in the residence and lighting a fire directly underneath

22

the broken window.  The petitioner argues that the Court should not have taken this fact into account because the petitioner did not recite it in answering the Court's instruction to "tell [the Court] what you did in connection with the offense to which you are pleading guilty." (Tr. 22.)  However, the fact that the petitioner saw his former girlfriend enter the residence is set forth in the Amended Specification, to which the petitioner pleaded guilty and which the petitioner confirmed that he had reviewed and that he understood.  Indeed, defense counsel stated on the record that the he did not object to that language.  (Tr. 18.)  Thereafter the language was read to the petitioner and he said that he understood the Government would be required to prove it.  (Tr. 18.)  Conduct that constitutes a violation of supervised release "need only be found by a judge under a preponderance of the evidence standard." Johnson v. United States, 529 U.S. 694, 700 (2000); see 18 U.S.C. § 3583(e)(3). The petitioner points to no case standing for the proposition that a court should ignore facts charged in a specification that has been admitted by a defendant in the course of a guilty plea in determining the appropriate and reasonable sentence for a defendant.  The Court could find by a preponderance of the evidence, based on the facts described in the Amended Specification, that the petitioner saw his former girlfriend enter the residence before lighting the fire underneath the

Case 1:08-cv-02998-JGK   Document 15   Filed 05/13/09   Page 24 of 26

window.  At no point during the entire plea and sentencing
proceedings did the petitioner challenge this fact after
admitting to it as part of the Amended Specification.  Indeed,
it should be noted that the Amended Specification was amended on
the record precisely because the petitioner did challenge other
facts that were incorporated in the original Specification.
(Tr. 5-6.)[5]

     Finally, the petitioner argues that his sentence was
substantively unreasonable.  There is no basis for such an
argument.  The Court had originally sentenced the petitioner to
time served after downwardly departing from the Sentencing
Guidelines Range of 70-87 months for a serious narcotics
offense.  At the sentencing for the violation of supervised
release, the Court noted that the petitioner's release was not
successful.  The petitioner had committed a serious violation of
the terms of his supervised release by violating a state law in
New Jersey, an offense sufficiently serious to warrant a
sentence of four years and six months from the New Jersey State
court.  The Probation Department recommended a consecutive
sentence of sixty months, but the Court ultimately imposed a
sentence of thirty months to run consecutively with the New
Jersey State court sentence.  In doing so, the Court considered

---

[5]      The Court was never asked to make a finding of fact at sentencing with
respect to the presence of the petitioner's girlfriend in the house at the
time of the fire because it was never disputed.  (Tr. 42-45.)

the relevant factors in Section 3553(a).  (Tr. 43-45.)[6]  The
Court also imposed a five year term of supervised release and
noted that the program of mental health counseling and drug
treatment should provide the petitioner with the ability to
assure that he was not a danger to the community or to himself.
The sentence was reasonable.

For the foregoing reasons, the petitioner's due process
allegations provide no basis for vacating, setting aside, or
correcting the petitioner's sentence.


CONCLUSION

The Court has considered all of the parties' arguments.  To
the extent not specifically addressed the remaining arguments
are either moot or without merit.  For the reasons discussed
above, the petition is **denied**.  The Court declines to issue a
certificate of appealability because the petitioner has not made
a substantial showing of the denial of a constitutional right.

---

[6]      In the course of explaining its reasons, the Court noted that the Court
considered the nature and circumstances of the offense, and the history and
characteristics of the defendant, which are appropriate considerations under
18 U.S.C. § 3583(e) (cross referencing 18 U.S.C. § 3553(a)(1)).  The Court
also noted that the sentence is "consistent with, and sufficient but no
greater than necessary to accomplish the purposes of [18 U.S.C. §]
3553(a)(2)."  (Tr. 43.)  The considerations for a modification of supervised
release specified in 18 U.S.C. § 3583(e) do not explicitly cross reference 18
U.S.C. § 3553(a)(2)(A) – the need for the sentence "to reflect the
seriousness of the offense; to promote respect for the law; and to provide
just punishment for the offense . . . ."  However, the Court appropriately
took into account the seriousness of the violation of supervised release and
the fact that the period of supervision had not been successful.

See 28 U.S.C. § 2253.  The Clerk is directed to close Docket No.

1 and to close this case.


SO ORDERED

Dated: New York, New York
        May 13, 2009

                                    John G. Koeltl
                        United States District Court Judge